IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

JUDY LUANNE POLSON,                )
                                   )
            Plaintiff,             )
                                   )
v.                                 )     Case No. CIV-10-463-KEW
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social             )
Security Administration,           )
                                   )
            Defendant.             )

**OPINION AND ORDER**

Plaintiff Judy Luanne Polson (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A).  Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform.  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 24, 1962 and was 46 years old at the time of the ALJ's decision. Claimant completed her high school education. Claimant has worked in the past as a home health aide, teacher's aide, cashier, and sales clerk. Claimant alleges an inability to work beginning September 25, 2004 due to limitations resulting from a leg injury and degenerative disc disease.

### Procedural History

3

On December 11, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On October 24, 2008, an administrative hearing was held before ALJ Lantz McClain in Tulsa, Oklahoma. On January 22, 2009, the ALJ issued an unfavorable decision on Claimant's application. On October 6, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform sedentary work.

### Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to perform a proper analysis at step 5; and (2) failure to perform a proper credibility determination.

### Step Five Analysis

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post right leg fracture, degenerative

4

joint disease, and degenerative disc disease.  (Tr. 11).  He found Claimant retained the RFC to perform a full range of sedentary work. (Tr. 13).

Claimant first contends the ALJ's application of the Medical-Vocational Guidelines (the "grids") was improper.  Specifically, Claimant contends her pain constitutes a non-exertional impairment which would preclude the application of the grids.  The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level."  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).  "[D]isability requires more than mere inability to work without pain.  To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment."  Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids."  Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984).  The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant.  Id.

Claimant was involved in a motor vehicle accident and suffered

an injury to her right leg. (Tr. 399). She returned to work. (Tr. 97-98). In January of 2002, Claimant was diagnosed with degenerative joint disease. (Tr. 357).

On March 21, 2007, Claimant was evaluated by Dr. Chris Vassiliou. Dr. Vassiliou noted Claimant was presenting with complaints of right leg pain, specifically in the right knee and hip. (Tr. 399). Upon examination, Claimant demonstrated normal posture, range of motion within normal limits, negative straight leg raising bilaterally in the seated and supine positions, no ligamentous laxity, and negative Apley's grind test bilaterally. (Tr. 400). Dr. Vassiliou specifically found no restricted range of motion involving the right knee and no effusion involving the bilateral knees. Within the right hip, Dr. Vassiliou noted mild tenderness to palpation involving the right hip joint, however, no restricted range of motion. Claimant ambulated with an antalgic gait favoring her left side at a slow pace, although it was safe without the use of any assistive devices. (Tr. 401).

On April 19, 2007, a Physical Residual Functional Capacity Assessment form was completed by Dr. Shafeek Sanbar. Dr. Sanbar found Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit about 6 hours in an 8 hour workday

and engage in unlimited pushing and pulling. He determined Claimant had strength 5/5 in upper and lower extremities, had non-regional focal sensory deficits of the right lower extremity, distal to mid tibia/fibula, felt to likely be secondary to prior surgical intervention. Claimant was able to stand on heels and toes, her gait was antalgic, but felt to be safe, with no assistive device needed. She had full range of motion in both hips and knees. No additional functional limitations were established. (Tr. 406-13).

In May of 2008, the medical evidence demonstrates that Claimant had little, if any, change relative to her condition since September 13, 2000. (Tr. 481). Claimant does not appear to have begun complaining of pain until November of 2007. (Tr. 455). Throughout her treatment, Claimant's physicians prescribed relatively mild pain medication - Ibuprofen with one prescription for Darvocet. (Tr. 399, 415, 438, 442, 462, 464, 466). Nothing in the record suggests that Claimant could not tolerate pain medication, suffered side effects, or could not afford the medication.

The finding of the ALJ that Claimant's subjective severe pain complaints were not credible is supported by the record. Claimant's treatment for pain was conservative and minimal.

Further, Claimant suffered from no nonexertional impairment serious enough to limit the range of jobs available to her and the ALJ's findings in this regard were supported by substantial evidence. Thus, the ALJ properly relied on the medical-vocational guidelines to demonstrate the existence of substantial gainful work in which Claimant could engage. *See*, Castellano v. Sec. of Health & Human Servs., 26 F.3d 1027, 1030 (10th Cir. 1994)("reliance on the grids was not error as the ALJ found plaintiff's testimony regarding his pain not fully credible").

Claimant next challenges the ALJ's findings with regard to her mental condition. On March 26, 2007, Dr. Carolyn Goodrich completed a Psychiatric Review Technique form on Claimant. She found Claimant suffered from panic disorder without agoraphobia. (Tr. 390). She concluded, however, that the condition was not severe and imposed only mild restrictions in three areas of functional activities. (Tr. 395). Nothing in the record indicates the condition significantly restricts the full range of work Claimant may perform in the sedentary category. As a result, application of the grids was not precluded in this case. *See* Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988).

Claimant contends the ALJ's hypothetical questioning of the vocational expert did not contain any limitations at step four. The

ALJ established that Claimant's past relevant work exceeded her RFC in his questioning of the vocational expert. (Tr. 37-38). No error is found in the questioning of the vocational expert.

### Credibility Determination

Claimant asserts the ALJ did not perform a proper credibility analysis.  It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or

sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In his decision, the ALJ sufficiently linked the medical evidence to the findings on credibility.  In particular, the ALJ identified significant contradictions between the medical findings and Claimant's assertions of impairment.  "[A] formalistic factor-by-factor recitation of the evidence" is not required to support the necessary analysis.  Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ's discussion and the references to the objective record contained in it, considered in toto, is sufficient to support the credibility findings of the ALJ.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

DATED this 28th day of March, 2012.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE